# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:08-CR-129

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| MICHAEL DANYELLE STINSON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

THIS MATTER comes now before the Court on Defendant's Motion to Suppress Evidence (Doc. No. 11) found by police during a search that allegedly violated the Fourth Amendment of the United States Constitution. For the reasons set forth herein, the Court DENIES Defendant's motion.

## FINDINGS OF FACT

Based on the evidence presented by the United States and Defendant at the evidentiary hearing on April 20, 2009 the Court makes the following findings of fact:

1. On September 19, 2007, at 2000 hours, Officers Hall and Edwards of the Charlotte-Mecklenburg Police Department responded to a call for service in the area of Burnette Avenue and Nobles Avenue in the city of Charlotte, North Carolina.

2. An anonymous caller reported seeing an armed black male with a bald head wearing a white t-shirt and blue shorts selling drugs out of a red vehicle bearing North Carolina license plates numbered WNE-6746 on Burnette Avenue in Charlotte.

3. Two police officers had been killed near this location five months prior.

4. Officer Edwards arrived at this location first and observed a man and a vehicle that fit the description provided by the police dispatch.

5. The man that Officer Edwards observed was Defendant Michael Danyelle Stinson.

6. When Officer Edwards arrived on the scene, he also observed a woman, later identified as Tiffany Gould, standing with Defendant. Gould eventually walked away and stood on the porch of an adjacent home.

7. Officer Edwards gained Defendant's consent to search his person for weapons.

8. As Officer Edwards and Defendant were standing next to the red vehicle that matched the description of the vehicle provided by the police dispatch, Officer Edwards asked Defendant whether he owned the vehicle. At this point, Officer Hall arrived on the scene.

9. Defendant stated that he did not know to whom the vehicle belonged.

10. Officer Edwards conducted a protective search and removed two cell phones, a large amount of cash and some keys from Defendant's person.

11. While removing the keys from Defendant's pocket, Officer Edwards inadvertently pressed a button on the keyless entry pad attached to Defendant's keyring while the keys were still in his pocket. Officer Hall observed this occurrence.

12. The button unlocked the doors to the red vehicle parked next to Defendant and Officer Edwards.

13. Officer Edwards asked Defendant why he had denied ownership of the car, and detained him because: (1) Burnette Avenue is in a high crime area, (2) Defendant had been identified with particularity based on the description provided from the dispatch, which also said that Defendant was believed to be armed and engaged in drug trafficking, and (3) Defendant was shaking and held his hands nervously in the air.

14. Based on these reasons, Officer Edwards handcuffed Defendant, and Officer Hall, who was standing by, asked Defendant for permission to search his vehicle.

15. There is somewhat of a dispute about whether Defendant consented to the officers' search of his vehicle. Officer Hall testified that Defendant withheld consent initially, but then subsequently consented to the search once Defendant was seated inside the patrol car. Officers Edwards and Carter testified that they never heard Defendant deny consent, but did hear Defendant grant permission to search his vehicle by saying, "I don't mind. Yeah. That's fine." Weighing the facts, the Court finds by a preponderance of the evidence that Defendant explicitly consent to the search of his vehicle.

16. None of the evidence produced by either the Government or Defendant shows that Defendant revoked his consent once it was given. Furthermore, Defendant has not presented any evidence to show the officers used coercive tactics to obtain his consent. See U.S. v. Watson, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough to demonstrate a coerced . . . consent to search.").

17. Officer Hall searched Defendant's vehicle and found a handgun.

## ANALYSIS

Defendant argues that the gun taken from his car should be suppressed for two reasons: (1) the initial stop when the officers asked Defendant for permission to search his person was in violation of the Fourth Amendment, and (2) the officers coerced Defendant to consent to the search of his person and vehicle.

The Government responds, arguing that: (1) the initial stop of Defendant was authorized under Terry v. Ohio, 392 U.S. 1 (1968); (2) Defendant voluntarily consented to the search of his vehicle; and (3) even if Defendant did not consent to the search of his vehicle, the search was still

lawful as a protective search. Because the Court finds that, as a matter of fact, Defendant consented to the searches of his person and vehicle and, as a matter of law, was not coerced into giving consent to the search of his person or vehicle, the Court does not need to reach the legal issue of whether the vehicle search constituted a lawful protective search.

**I. Defendant's Initial Seizure**

A police officer's right to make an on-the-street stop and accompanying frisk is bound by the protections of the Fourth Amendment. While searches and seizures conducted without a warrant are per se unreasonable under the Fourth Amendment, a few well-established and narrowly defined exceptions exist. Katz v. United States, 389 U.S. 347, 357 (1967). The relevant exception here provides that "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quotation omitted).

The level of suspicion required to justify a stop and search does not need to rise to a level of probable cause, but it still needs to be more than a hunch. Terry, at 22-24, 27. And, an officer may not conduct an investigatory protective search until *after* he has formed the reasonable suspicion of criminal activity that supports the investigatory stop. United States v. Burton, 228 F.3d 524, 527 (4th Cir. 2000).

Here, Officers Edwards and Hall detained Defendant after they became aware of several articulable facts that demonstrated Defendant was acting criminally. First, the officers had specific information that described Defendant and his vehicle; indeed, the license plate number from the call for service matched the license plate on the red car next to Defendant. Next, before arriving on the scene, the officers received an anonymous tip that Defendant was armed. Finally, Defendant's

untruthfulness about his ownership of the vehicle, his nervous behavior when confronted by the officers, and the location of the encounter in a high-crime area where two police officers were recently killed all reasonably aroused Officers Edwards' and Hall's suspicion that Defendant was engaged in criminal activity. Defendant has not shown, and the Court does not find, that the initial stop violated Defendant's rights under the Fourth Amendment.

**II. Defendant's Consent to the Search of his Person**

Defendant argues that the officers coerced him into consenting to a search of his person. As long as a reasonable person would have felt free "to disregard the police and go about his business" the encounter is consensual. Florida v. Bostick, 501 U.S. 429 (1991) (internal citations omitted). A consensual encounter does not trigger Fourth Amendment scrutiny. Terry, 392 U.S. at 16-21. A person has been seized within the meaning of the Fourth Amendment only if, in light of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. See id.

In light of all of the circumstances surrounding the stop, the search of Defendant's person conducted by Officers Edwards and Hall before Defendant was handcuffed was consensual and not coerced, and thus does not trigger Fourth Amendment scrutiny. First of all, Defendant was outside of his car, in an open area, and in a public place when the officers approached. Next, the officers made casual conversation with Defendant and asked routine questions about the vehicle parked next to him and whether he had any weapons. Finally, the officers did not speak to Defendant in a threatening manner, nor did the officers draw their weapons. A reasonable person in Defendant's shoes would have felt free to deny officers Edwards' and Hall's request to search him for weapons and leave. Accordingly, the Court finds that Defendant's consent to search his person was freely and voluntarily given. Thus, the search of Defendant's person was lawful.

### III. The Search of Defendant's Vehicle

Defendant also argues that the officers coerced him into consenting to a search of his vehicle. Express consent given voluntarily is an exception to the Fourth Amendment prohibition against warrant-less searches. See Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001). Express consent can be voluntarily given by a person in custody. See United States v. Rusher, 966 F.2d 868 (4th Cir. 1992).

The key issue before the Court is whether Defendant gave voluntarily express consent to the search of his vehicle. At the hearing, Officers Edwards and Carter testified that they heard Stinson, sitting handcuffed in the back of the police cruiser, respond to Officer Edward's request to search Stinson's vehicle by saying, "I don't mind. Yeah. That's fine." Officer Hall testified at the hearing that Stinson initially refused to give consent to the search of his vehicle, but that after the keyless entry pad in Defendant's pocket unlocked the suspect vehicle, the officers detained Defendant and asked him why he lied about the vehicle. Officer Hall testified that the officers again asked Defendant whether he would "mind if we search the vehicle." At that point, Defendant consented to the search. Officer Hall's testimony is not inconsistent with Officers Edwards and Carter's testimony that Defendant consented to the search while he was detained in the back of the patrol car. Defendant has failed to show any "overt act," "threat of force," "promises made to him," and "indication of more subtle forms of coercion that might flaw his judgment" or present other sufficient evidence to show that such consent was coerced. U.S. v. Watson, 423 U.S. at 424 (noting the lack of evidence as to these various factors in ruling that consent was not coerced). Here, the Court is unconvinced in light of the totality of the circumstances that the mere fact Defendant was handcuffed at the time he consented requires a finding that the officers coerced Defendant to give his consent. Id. Weighing the facts and the testimony presented at the hearing, the Court finds that

Defendant voluntarily consented to the search of his vehicle; therefore, the search of Defendant's vehicle was lawful.

## CONCLUSION

Based on the findings of fact and conclusions of law set forth above, the Court hereby DENIES Defendant's motion to suppress.

IT IS SO ORDERED.

Signed: August 26, 2009

Frank D. Whitney
United States District Judge